IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDERICK E. BOUCHAT, | * | |
| Plaintiff | * | |
| v. | * | Case No. 11-cv-02878-MJG |
| NATIONAL FOOTBALL LEAGUE PROPERTIES, LLC, *et al.*, | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| FREDERICK E. BOUCHAT, | * | |
| Plaintiff | * | |
| v. | * | Case No. 12-cv-01495-MJG |
| NATIONAL FOOTBALL LEAGUE ENTERPRISES, LLC, *et al.*, | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| FREDRICK E. BOUCHAT, | * | |
| Plaintiff | * | |
| v. | * | Case No. 12-cv-01905-MJG |
| BALTIMORE RAVENS LIMITED PARTNERSHIP, | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendants' assertion of fair use in this case is yet another attempt by the "fat cats" of the NFL and their business partners to rip off the little guy and commercially exploit Bouchat's intellectual property for financial gain, under the guise of fair use. Once again, masquerading as historians and museum curators, despite previously being adjudicated infringers,[1] Defendants in these cases would have the Court grant them a perpetual license and sanitize their prior infringements. The fair use doctrine, however, is not a license for corporate theft. *Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc.*, 621 F.2d 57, 61 (2nd Cir.1980).

Defendants and this Court are bound by principles of claims-and-issue preclusion and *stare decisis* by the Fourth Circuit's decision in *Bouchat v. Baltimore Ravens Limited Partnership*, 619 F.3d 301 (4th Cir. 2010)(*Bouchat IV*). There, the Court held that the NFL's alleged historical use of Bouchat's logo design in highlight films was not fair use, subject to the exception that non-commercial use of Bouchat's work in a museum setting, where no fee was charged, was fair use.[2] The Court rejected virtually the same

---

[1] It was conclusively determined in *Bouchat I* and its progeny that each of the Defendants in these cases was an infringer of Bouchat's copyrighted work and is bound by that determination. *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 328 (4th Cir. 2007) (claims preclusion)(*Bouchat III*).

[2] The Ravens are commercially exploiting the original infringement in the stadium Club Level. *See Bouchat IV*, at 314. The Ravens use the logo on the Club Level as décor for their bar and food services that cater to its high paying, premier clientele. *See* Schulman & Ignozzi Affidavits. The Baltimore Ravens website marketing the stadium's "Amenities" touts that the "Club Level decor features a historical perspective of football in Baltimore highlighting great games, teams and players from the area's rich football (Footnote continued)

arguments advanced by Defendants here.

Defendants are using the copyrighted logo design as a logo and team identifier in the exact manner it was intended. *Bouchat IV*, at 309-10. Selecting snippets to fashion a misleading argument, Defendants go to great lengths to distance themselves from the notion that their use is non-transformative, and is commercial. Clearly, however, Defendants have not and cannot establish that their uses and displays of the copyrighted work before the Court are in a non-commercial, museum-like setting in which no fee is charged, the factors that the Fourth Circuit found "added something new" to transform the original purpose. *Bouchat IV*, 619 F.3d at 313-14. If anything, Defendants are exploiting the copyrighted work, as part of their revenue engine, in a circus-like atmosphere, as befits the great showmen the Defendants are.

Defendants argue that they generate no revenues as a consequence of the uses in question. Whether the copyrighted design induced the decision for someone to pay the Defendants a fee is irrelevant. What is relevant is that Defendants used the work without permission. *See Bouchat IV*, at 312. Defendants' exploitation of the copyrighted design is part of Defendants' mainstream, revenue-making operations. *Herbert v. The Shanley Co.*, 242 U.S. 591, 594-95 (1917)("The defendants' performances [of infringed music in a hotel restaurant] are not eleemosynary. They

---

history." *See* attachment to Ignozzi Affidavit. The August 15, 2012 Ravens email to Club Level PSL holders (attached to Reynolds Affidavit) indicates that the new "Nutty Bavarian and Ice Cream Station" is located at Section 224. This section is in close proximity to the display of Bouchat's logo design on the walls outside the woman's bathroom. *See* photos attached to Schulman Affidavit.

3

are part of a total for which the public pays . . . . [T]he purpose of employing it is profit and that is enough."); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 446-47 n.28 (1984) ("The traditional method by which copyright owners capitalize upon the television medium -- commercially sponsored free public broadcast over the public airwaves -- is predicated upon the assumption that compensation for the value of displaying the works will be received in the form of advertising revenues.").

Defendants argue that there is no market harm. They are precluded from re-litigating this issue and had their opportunity in *Bouchat IV* but lost. Even on this record, Defendants have not overcome the presumption of market harm that arises from the commercial, non-transformative use of the copyrighted logo design.[3]

---

[3] In *Campbell*, the Supreme Court addressed the Sixth Circuit's application of the language in *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984) that "every commercial use…is presumptively…unfair." The Sixth Circuit had held the first and fourth factors against fair use because the parody at issue was of a commercial nature. *See Campbell*, 510 U.S. at 574. In reversing, the Supreme Court clarified that the language about a presumption of market harm in *Sony* was limited to non-transformative uses and reaffirmed that there is a presumption of market harm when a copyrighted work is duplicated in its entirety in commercial use:

> **No "presumption" or inference of market harm that might find support in *Sony* is applicable to a case involving something beyond mere duplication for commercial purposes.** *Sony*'s discussion of presumption contrasts a context of verbatim copying of the original in its entirety for commercial purposes, with the non-commercial context of *Sony* itself (home copying

(Footnote continued)

Similar to *Bouchat IV*, Defendants argue that apart from their use of the copyrighted logo design, there is either no market or Bouchat has not sought to

> of television programming). In the former circumstances what *Sony* said simply makes common sense: **when a commercial use amounts to mere duplication of the entirety of an original, it clearly "supersede[s] the objects," of the original and serves as a market replacement for it, making it likely that cognizable market harm to the original will occur.** *Sony, supra,* **at 451. But when, on the contrary, the second use is transformative, market substitution is at least less certain and market harm may not be so readily inferred.**

*Campbell*, 510 U.S. at 591 (emphasis added; citation omitted). "[T]he role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps [the market for the original]." *On Davis v. The Gap*, 246 F.3d 152, 175 (2nd Cir. 2001) (quoting *Campbell*, 510 U.S. at 592).

> In other words:
>> when secondary uses harms (sic) the market for, or value of, the original, courts must examine the source of the harm. If the harm resulted from a transformative secondary use that lowered the public's estimation of the original (such as a devastating review of a book that quotes liberally from the original to show how silly and poorly written it is), this transformative use will be found to be a fair use, notwithstanding the harm. If, on the other hand, the secondary use, by copying the first, offers itself as a market substitute and in that fashion harms the market value of the original, this factor argues strongly against a finding of fair use.

*On Davis*, 246 F.3d at 175-76.

5

exploit the market for his copyrighted design. The Fourth Circuit, however, rejected this argument. *Bouchat IV*, 619 F.3d at 312-13. Although Bouchat has not elected, at this juncture, to exploit the copyrighted logo design or develop a market for it separate and apart from Defendants is irrelevant to whether there has been market harm. *Castle Rock Entertainment v. Carol Pub. Group, Inc.*, 150 F.3d 132, 144-46 (2nd Cir.1998); *Iowa State*, 621 F.2d at 62 (holding that even if the plaintiff cannot avail itself of the market, this does not automatically vest the defendant with the right to infringe and then exploit the market if they are in a position to do so.); *Balsley v. LFP*, _____ F3d _____, 212 WL 3517571 (6th Cir. 2012) (plaintiff's current desire to avail itself of the market for its photograph is immaterial to the issue of whether there is a potential for an adverse effect on the potential market for a photograph, should the challenge use become widespread); *Millennium Radio Group, LLC*, 650 F.3d 308-09 (3rd Cir. 2011) (defendants' use of the copyright work is evidence of market demand).

"[T]o negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work." *Bouchat IV*, 619 F.3d at 312 (*quoting Harper & Row*, 471 U.S., at 568). The Fourth Circuit found, separate and apart from the lack of evidence presented by Defendants, that there was a potential market for historical logos that still existed and that Defendants failed to prove that it did not still exist. *Id.* Defendants' presentation and evidence is little different in this case than in

6

*Bouchat IV*. By contrast, as reflected in Plaintiff's exhibits, there is a market for retro merchandise and photographs using Bouchat's design, separate and apart from Defendants' use.

Some of the merchandise is sold online and others within sight of M & T Bank Stadium on game days. Some appears to be non-NFL licensed merchandise, such as the watch referenced in the Reynolds affidavit, and thereby independent of the Defendants. *See* Schulman, Burtnick & Reynolds Affidavits. Bmore's Finest Pitbull Kennel's use of the copyrighted design is independent of football. *See* Schulman & Ignozzi Affidavits. The Baltimore Ravens themselves sell 1996 & 1997 team photos displaying the Bouchat logo design. *See* Ignozzi Affidavit. In addition, Plaintiff's exhibits reflect the existence of a market for historical photographs depicting the copyrighted logo design. Plaintiff, thus, has presented evidence that there is a market for retro merchandise and photographs, as well as non-Ravens related use of the copyrighted design. Under *Bouchat IV*, therefore, a potential market exists for the copyrighted work and "[i]n light of the market in licensing historic logos, Defendants' unrestricted use of the infringing Flying B logo 'would result in a substantially adverse impact on the potential market for [Bouchat's] original' logo." *Bouchat IV*, at 313 (Citation omitted).

## CONCLUSION

Defendants have had the option to refrain from commercial exploitation of Bouchat's logo design or, alternatively, seek a license from Bouchat. Instead of

7

working within the free market system, Defendants request that this Court use "fair use" as a vehicle for the Court to hand Defendants a perpetual license. This approach makes a mockery of the copyright law and invites public cynicism. The bottom line is that Defendants do not want the free market to operate and want the courts to grant them a perpetual license to use Bouchat's copyrighted work without paying for it. If they were so interested in the public's need to know and the public's interest in their history, Defendants would have contributed it to the public domain, instead of selling it or using it as a marketing tool, while hypocritically and vigorously asserting their own intellectual property rights against those who have not paid the going fare. Defendants' purported use of Plaintiff's copyrighted work for historical purposes is the antithesis of fair use. In equity, a thief cannot have the benefit of his or her theft.

_____
Howard J. Schulman (Fed. Bar No. 00129)
Schulman & Kaufman, LLC
One Charles Center, Suite 600
100 N. Charles Street
Baltimore, Maryland 21201
(410) 576-0400
Attorneys for Plaintiff