IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

```
————————————————————————————  x
                               :
FREDERICK E. BOUCHAT,          :
                               :
                Plaintiff,     :
                               :
    - against -                :
                               :
NATIONAL FOOTBALL LEAGUE       :     Case 1:11-cv-02878-MJG
PROPERTIES, LLC et al.,        :
                               :
                Defendants.    :
                               :
                               :
————————————————————————————  x
```

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Elizabeth A. McNamara
Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1633 Broadway 27th floor
New York, New York 10019
Tel:  (212) 489-8230
Fax:  (212) 489-8340

    - and -

Gerard P. Martin
Paul M. Flannery
ROSENBERG | MARTIN |
GREENBERG, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland 21201
Tel: (410) 727-6600
Fax: (410) 727-1115

*Attorneys for Defendant*
*Electronic Arts Inc.*

Robert L. Raskopf
Todd Anten
Rachel E. Epstein
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

    - and -

Mark D. Gately
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, Maryland 21202
Tel: (410) 659-2742
Fax: (410) 659-2701

*Attorneys for Defendants NFL Properties LLC*
*and National Football League Properties, Inc.*

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................... 3

EA'S USE OF THE FLYING B LOGO IN *MADDEN NFL* CONSTITUTES FAIR USE AS A
MATTER OF LAW ..................................................................................................... 3

    A.    *Bouchat IV* Does Not Preclude a Finding of Fair Use. ........................................ 3

    B.    Defendants Established the Use at Issue is a Fair Use and Bouchat Fails to
    Rebut any of Defendants' Fair-Use Arguments .................................................... 7

        1.    EA's Use of the Work is Transformative. ................................................. 7

        2.    EA Does Not Commercially Exploit the Work Directly. ........................... 8

        3.    Bouchat Concedes That Factors Two and Three Are Neutral. ................... 9

        4.    EA's Use of the Work Does Not Negatively Impact Any Current or
        Potential Market for the Shield Drawing. ................................................ 10

    C.    Bouchat's Evidentiary Submissions Fail to Identify Any Viable Market
    That Would Be Harmed By EA's Use. ............................................................... 12

CONCLUSION ......................................................................................................... 16

DWT 20518788v1 0058278-000021

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.V. v. iParadigms, LLC*,
   562 F.3d 630 (4th Cir. 2009) ................................................................8

*Am. Geophysical Union v. Texaco Inc.,*
   60 F.3d 913 (2d Cir. 1994).............................................................5, 12

*Balsey v. LFP, Inc.*,
   691 F.3d 747 (6th Cir. 2012) ........................................................10, 11

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)..........................................................10, 12

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006).........................................................10, 12

*Bond v. Blum*,
   317 F.3d 385 (4th Cir. 2003) ..............................................................14

*Bouchat v. Baltimore Ravens Limited Partnership*,
   619 F.3d 301 (4th Cir. 2010) ("*Bouchat IV*") ............................... passim

*Bouchat v. Bon-Ton Dept. Stores, Inc.*,
   506 F.3d 315 (4th Cir. 2007) ...............................................................3

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).................................................................7, 9, 10

*Castle Rock Entertainment v. Carol Publishing Group, Inc.*,
   150 F.3d 132 (2d Cir. 1998)..........................................................10, 11

*Herbert v. The Shanley Co.*,
   242 U.S. 591 (1917)...........................................................................8, 9

*Iowa State University Research Foundation, Inc. v. ABC, Inc.*,
   621 F.2d 57 (2d Cir. 1980)..................................................................12

*Johnson v. United States*,
   No. 09-0787, 2012 WL 1969995 (D. Md. May 31, 2012).....................9

*Maxtone-Graham v. Burtchaell*,
   803 F.2d 1253 (2d Cir. 1986)...............................................................8

*Murphy v. Millennium Radio Group LLC*,
   650 F.3d 295 (3rd Cir. 2011) ..............................................................11

*Nunez v. Caribbean Int'l News Corp.*,
235 F.3d 18 (1st Cir. 2000) ...........................................................................10

*On Davis v. The Gap*,
246 F.3d 152 (2d Cir. 2001) ..........................................................................10

*Orca Yachts, L.L.C. v. Mollicam, Inc.*,
287 F.3d 316 (4th Cir. 2002) ............................................................................3

*Ringgold v. Black Entm't Tel.*,
126 F.3d 70 (2d Cir. 1997) .............................................................................12

*Sofa Entertainment, Inc. v. Dodger Productions*,
782 F. Supp. 2d 898 (C.D. Cal. 2010) ...........................................................10

*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ...........................................................................8, 9, 10

## STATUTES & RULES

17 U.S.C. § 107 .............................................................................................6, 16

17 U.S.C. § 109(a) ..............................................................................................13

Federal Rule of Civil Procedure 56 ....................................................................1, 16

Defendants Electronic Arts Inc. ("EA"), NFL Properties LLC, and National Football League Properties, Inc. (collectively, "Defendants") submit this reply memorandum of law in further support of their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Defendants' opening brief established that EA's use of the Flying B Logo in its *Madden NFL* video game constitutes fair use as a matter of law.   Defendants thoroughly demonstrated each of the critical components that established their fair use defense:

- that *Madden NFL* does not recreate, recount or imitate real-life or historical NFL games, but rather gives users creative control over a fictional football world in which the Flying B Logo plays, at most, an incidental role as a historical uniform option;

- that EA's use is transformative because it incorporates the Flying B Logo to enable video game users to draw on NFL history in crafting their own fictional stories about NFL football in a distinct manner from simply watching games;

- that  *Madden NFL* does not use the Flying B Logo for its original purpose of identifying actual, real-world Ravens' players in NFL game play during the 1996-1998 seasons;

- that EA does not commercially exploit the Flying B Logo for its creative expression, but uses it only for its historic significance as an NFL logo; and

- that EA's transformative use of the Flying B Logo does not harm any actual or potential market for Bouchat's work.

1

Bouchat's response never directly addresses any of these components of EA's fair use defense or any facts specifically relevant to EA's use of the Flying B Logo.  Indeed, EA and *Madden NFL* are ***never mentioned*** in Plaintiff's brief, and only ***a single paragraph*** (on an uncontroverted point) is dedicated to *Madden NFL* in his evidentiary submissions.  *See* Affidavit of Marie J. Ignozzi ("Ignozzi Aff.") ¶ 13.  Instead, Bouchat skips over the necessary analysis and asks the Court to adopt a simplistic and inaccurate  reading of the Fourth Circuit's decision in *Bouchat v. Baltimore Ravens Limited Partnership*, 619 F.3d 301, 309 (4th Cir. 2010) ("*Bouchat IV*").  Under Bouchat's view, fair-use protection would be denied to ***any*** representation or depiction of the Flying B Logo as part of a for-profit endeavor, regardless of the purpose and character of the use and regardless of how tenuous the link between the use and any financial gain.  That one-size-fits-all rule is not only a misreading of the *Bouchat IV* decision, it is also completely at odds with the controlling law (in this Circuit and others) on fair use.

Next, Bouchat improperly tries to supplement his sworn interrogatory responses by claiming purported "markets" not previously identified.  However, many of these supposed "markets" are either no longer functional or exist in violation of the NFL's and Raven's trademarks.  Further, Plaintiff presents no evidence that anyone involved is obligated or willing to pay him a license fee, while his own sworn interrogatory responses confirm that the challenged use of the Flying B Logo by Defendants has not harmed any actual or potential market for Plaintiff's work.  Even if these "markets" did exist, EA's transformative use of the Flying B Logo as a graphic buried inside an interactive video game does not provide a market substitute for any of the goods or services Bouchat identifies.  Plaintiff has failed to overcome

2

Defendants' fair-use defense in this case and, accordingly, his claims should be entirely dismissed.

## ARGUMENT

### EA'S USE OF THE FLYING B LOGO IN *MADDEN NFL* CONSTITUTES FAIR USE AS A MATTER OF LAW

While Defendants' opening brief set forth a thorough and detailed analysis of the proper application of the fair-use defense to the facts of this case, Plaintiff's opposition provides no tailored response to Defendants' fair-use arguments regarding *Madden NFL*.  Instead, he relies on a misreading of *Bouchat IV* and sweeping conclusions without any analysis or evidence to back them up.  As detailed below, this Court should reject Bouchat's arguments and grant summary judgment in Defendants' favor.

**A.    *Bouchat IV* Does Not Preclude a Finding of Fair Use.**

Plaintiff repeatedly claims that the Fourth Circuit's decision in *Bouchat IV* dictates a ruling in his favor (*see* Memorandum in Opposition to Motion for Summary Judgment ("Opp. Brief") at 2-7), but he is simply wrong.  Because EA's video games were not at issue in *Bouchat IV*, and the use of the Flying B Logo buried within the games bears no relation to the uses at issues in that case, there is no logical basis to argue, as Plaintiff does, that the Fourth Circuit rejected "virtually the same arguments advanced by Defendants here."  Opp. Brief at 2-3.[1]

---

[1] Bouchat's suggestion that claim or issue preclusion applies (Opp. Brief at 2, 4) is patently incorrect.  Claim preclusion does not apply because EA was not a party to *Bouchat IV* and is not in privity with the defendants in that case.  *See* Answer of Defendants NFL Properties LLC and National Football League Properties, Inc. ¶ 8; *Bouchat v. Bon-Ton Dept. Stores, Inc.*, 506 F.3d 315, 326-27 (4th Cir. 2007) (claim preclusion requires parties in the two actions to be identical or in privity).  Furthermore, Bouchat seeks redress for "different acts of [alleged] infringement" than those involved in *Bouchat IV*.  *See Bouchat IV*, 619 F.3d at 317.  Issue preclusion fails for the same reason.  *See Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002)

3

Far from compelling a ruling in Plaintiff's favor, a careful reading of *Bouchat IV* supports the conclusion that EA's use of the Flying B Logo in *Madden NFL* is transformative and a fair use.  Contrary to Plaintiff's suggestion, the holding of the highlights portion of *Bouchat IV* is narrow and readily distinct from the facts at issue here.  There, the majority held that ***"[s]imply filming football games*** that include the copyrighted logo does not transform the purpose behind the logo's use into a historical one."  619 F.3d at 309 (emphasis added).  The majority viewed the highlight films as serving essentially the same function as televising the original Ravens games—they replicated exactly what "an individual at home in her living room in 1996" would have seen, without adding any other purpose or message.  *Id.*

In contrast, *Bouchat IV* recognized that using the Flying B Logo to serve a ***different purpose*** than merely replicating what game viewers saw on television is transformative.  The Fourth Circuit held that the display in the Ravens corporate headquarters of two photographs featuring the team's first draft picks in their original uniforms had a transformative purpose because the logo was displayed for its historical rather than its expressive content.  *Id.* at 314.  Further, the Fourth Circuit emphasized that the display of the draft-pick photographs in the Ravens headquarters was not commercial because "the Ravens are displaying their team history without any ***direct or immediate*** financial remuneration," *id.* (emphasis added), and "the Ravens are 'not gaining ***direct or immediate*** commercial advantage from' the depictions of the logo in the lobby '– *i.e.,* [the team's] profits, revenues, and overall commercial performance were not

---

(issue preclusion only bars "subsequent litigation of those legal and factual issues common to both actions that were actually and necessarily determined" and "is more narrowly drawn" than claim preclusion) (internal quotation marks omitted).

tied to' this use," *id.* (quoting *Am. Geophysical Union v. Texaco Inc.,* 60 F.3d 913, 921 (2d Cir.

1994)) (emphasis added) (brackets in original).[2]

Here, EA's use of the Flying B Logo as one of many throwback, historical options in

*Madden NFL* is much more akin to the use of historical Ravens photographs in the corporate

headquarters than the use of the Logo in connection with highlight films.  *Madden NFL* does not

depict any actual Ravens games; nor are any actual Ravens players from the 1996-1998 seasons

represented as they were in those seasons.  Instead, the game gives users the ability to deploy

historic uniform options in fanciful, counterfactual ways to customize their game playing

experience.  *See* Memorandum of Law in Support of Defendants' Motion for Summary

Judgment ("SJ Brief") at 11-12. The Logo can be seen, if at all, only if a user selects the

"throwback" option, and a user could spend endless hours of game play without ever

encountering the Flying B Logo.  Declaration of Dan Baker in Support of Summary Judgment

("Baker Decl.") ¶ 11.  Nor is the use of the Logo commercially significant since it is undisputed

that no reference to the feature appears on the packaging for the games or in any promotion or

advertising.  Baker Decl. ¶ 20.  In short, the use of the Logo in *Madden NFL* goes far beyond

"[t]he simple act of filming the game in which the copyrighted work was displayed," *id.* at 309,

and instead "adds something new" to the purpose of using the Flying B Logo.  Experiencing the

virtual and interactive world of *Madden NFL* is a far cry from the passive experience of "an

individual at home in her living room in 1996," *id.*, and most certainly does not provide any

---

[2] The panel did not, as Plaintiff suggests, hold that only uses "in a non-commercial, museum-like setting in which no fee is charged" could "add[] something new" and thus qualify as transformative.  Opp. Brief at 3.  Any such rule—which was not articulated by the Fourth Circuit—would not be compatible with standard fair use analysis.  Further, the fact that the lobby was accessible without a fee was a distinct consideration from the finding that the use was transformative.  *Bouchat IV*, 619 F.3d at 314.

support for a conclusion that EA uses the Logo for any "direct or immediate commercial advantage." *Id.* at 314.  Accordingly, EA's use is transformative consistent with the analysis of *Bouchat IV*.

Nor does *Bouchat IV* support Plaintiff's contention that the Fourth Circuit "rejected" Defendants' arguments under fair-use factor four concerning market harm.  *See* Opp. Brief at 4-6.  In *Bouchat IV*, the panel repeatedly cited the lack of evidence regarding potential markets as the basis for its decision, *see, e.g.*, *id.* at 312-13, and only rejected an argument not made here: "that the fourth factor (market effect) weighs in favor of fair use because '[a] jury has already determined . . . that none of Defendants' profits from their active use of the Flying B logo in merchandise was attributable to Bouchat's work.'"  *Id.* at 312 (quoting Brief for Defendants-Appellees at 27).  Thus, given the lack of evidence, the Circuit found that there was a "potential market" for historical logos and that defendants failed to prove that it did not exist.

That evidentiary gap regarding potential markets has been rectified and this Court should have no problem finding that Plaintiff has failed to carry his burden on market harm.  The undisputed record evidence now shows that the NFL has not offered for sale any merchandise that features the Flying B Logo for over a decade, and any sales of such merchandise by third parties are not authorized by the NFL.  *See* Declaration of Gary Gertzog ¶¶ 3-4 (Doc. 29).  Defendants thus have established beyond any dispute that the market for NFL-licensed "throwback" merchandise featuring the Flying B Logo no longer exists.  *Bouchat IV* provides Plaintiff with no support in showing market harm under factor four.

6

**B.**     **Defendants Established the Use at Issue is a Fair Use and Bouchat Fails to Rebut any of Defendants' Fair-Use Arguments**

Defendants' opening brief established that EA's use constitutes fair use as a matter of law.  In a detailed analysis of the factors set forth in 17 U.S.C. § 107, Defendants showed:  (1) *factor one* favors Defendants because (a) EA's use is transformative in that it incorporates the Flying B Logo to enable video game users to draw on NFL history in crafting their own fictional stories about NFL football, SJ Brief at 10-15; and (b) EA does not promote or advertise the Logo and thus does not commercially exploit Plaintiff's work directly, *id.* at 15-17; (2) *factor two* is neutral because EA's transformative use relates to the work's historical rather than creative value, *id.* at 18-19; (3) *factor three* is neutral because EA used only as much of the work as necessary to accomplish its transformative purpose, 19-20; and (4) *factor four* favors Defendants because EA's transformative use does not negatively impact any current or potential market for the Shield Drawing, *id.* at 20-26.  Bouchat's response fails to address these arguments in any meaningful way.

**1.**     **EA's Use of the Work is Transformative.**

Plaintiff spends little effort on factor one's transformative-use inquiry, a remarkable choice given that "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  His conclusory argument that "Defendants are using the copyrighted logo design as a logo and team identifier in the exact manner it was intended" (Opp. Brief at 3) is contradicted by the undisputed facts in the record, and he provides neither evidence nor analysis to support it.

DWT 20518788v1 0058278-000021

The undisputed facts—evident from review of the *Madden NFL* games lodged with the Court and the Dan Baker Declaration—demonstrate that *Madden NFL* employs the Flying B Logo for a different purpose from its original purpose, which was to identify actual, real-world Ravens' players in NFL game play during the 1996-1998 seasons. *Bouchat IV*, 619 F.3d at 309. Instead, *Madden NFL* provides an immersive fictional experience that draws on current and historical facts and imagery—including the Flying B Logo—to enable users to create their own stories of NFL football. SJ Brief at 2-7, 10-12. This use of the Flying B Logo as a historical reference point for user creativity "employ[s] the quoted matter in a different manner or for a different purpose from the original, thus transforming it." *A.V. v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) (internal quotation marks omitted). Nowhere in his brief does Bouchat marshal any facts or argument to dispute this conclusion.

### 2.    EA Does Not Commercially Exploit the Work Directly.

Bouchat's response likewise fails to analyze any specific facts about *Madden NFL* in arguing that Defendants' uses are "of a commercial nature" under factor one. *See* Opp. Br. at 3-4. His broad-stroke argument fails to grasp that "[t]he commercial nature of a use is a matter of degree, not an absolute." *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1262 (2d Cir. 1986).[3] Bouchat's response nowhere addresses or distinguishes any of the controlling authorities cited by Defendants holding that sale of a product for profit is of minimal significance where the

---

[3] Bouchat argues:  "Whether the copyrighted design induced the decision for someone to pay the Defendants a fee is irrelevant.  What is relevant is that Defendants used the work without permission."  Opp. Brief at 3, citing *Bouchat IV*, 619 F.3d at 312.  This citation is misleading. The cited-to passage states that "a finding that none of defendants' profits derived from the Flying B logo has no bearing on 'the potential market for or value of the copyrighted work.'"  *Id.* (quoting 17 U.S.C. § 107(4)).  The passage does not discuss the factors that make a use "commercial" under fair-use factor one.

8

plaintiff's work is not used as a draw for customers and constitutes an insignificant or incidental feature of the secondary work.  SJ Brief at 15-17.  Instead, he relies on *Herbert v. The Shanley Co.*, 242 U.S. 591 (1917), and *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) (Opp. Brief at 4), but both cases are inapposite.  In *Herbert*, the Supreme Court found that infringing music performed in a restaurant was a draw for patrons and the restaurant in question could charge higher prices for food because of the music.  *Id.* at 594-95.  No similar facts are present here. The facts of *Sony* bear even less resemblance to this case, and the *Sony* Court's general language regarding a presumption of unfairness is *dicta* expressly limited by *Campbell*, something Plaintiff himself acknowledges.  Opp. Brief at 4-5 n.3.

Here, the undisputed record establishes that the Flying B Logo is not featured on the cover of the games, has never appeared in promotion or advertising and only may be reached as one of countless options available to users that are found deep within the games.  This type of use can hardly be seen as the "draw" that existed in *Herbert*.  In short, Plaintiff's response does nothing to alter the conclusion that EA's sale of *Madden NFL* to the public should not weigh against a finding of fair use.

### 3.     Bouchat Concedes That Factors Two and Three Are Neutral.

Bouchat does not challenge (and thus concedes) Defendants' arguments that fair-use factors two and three are neutral.  *See  Johnson v. United States*, No. 09-0787, 2012 WL 1969995, at *4 (D. Md. May 31, 2012) ("Failure to raise issues in opposition to summary judgment functions as a waiver.") (internal quotation marks omitted).

9

**4.     EA's Use of the Work Does Not Negatively Impact Any Current or Potential Market for the Shield Drawing.**

Finally, Bouchat attempts to establish that Defendants' uses somehow abstractly harm his supposed "markets" for the Shield Drawing.  *See* Opp. Brief at 4-7.  But in doing so he again fails to address the facts pertinent to *Madden NFL* and wholly mischaracterizes the law.   Thus, Bouchat's reliance on *Sony*'s presumption of market harm (Opp. Brief at 4-5 & n.3) is entirely misplaced.[4]   *Campbell* rejected the application of the *Sony* presumption to transformative uses— like here—finding as to 2LiveCrew's commercial rap song that "[n]o 'presumption' or inference of market harm that might find support in *Sony* is applicable to a case involving something ***beyond mere duplication*** for commercial purposes."  510 U.S. at 591 (emphasis added).  Because 2LiveCrew's song was transformative, the Court ruled that the presumption was inapplicable, noting that "when . . . the secondary use is transformative, ***market substitution is at least less certain and market harm may not be so readily inferred***."  *Id.* (emphasis added).[5]

Bouchat likewise is wrong to suggest he may claim the alleged infringements in this case and its companion cases as his market harm.  *See* Opp. Brief at 6.  If courts accepted this circular logic, factor four would automatically tip against fair use, despite the Supreme Court's

---

[4] Bouchat's reliance on the *Sony* presumption is doubly wrong because, as detailed above and in Defendants' opening brief, EA's use is only minimally commercial.

[5] Bouchat tries to suggest that "biting criticism" must exist to preclude market substitution, Opp. Brief at 5 n.5 (quoting *On Davis v. The Gap*, 246 F.3d 152, 175 (2d Cir. 2001)), but courts recognize that much more than "biting criticism" can be transformative, including news reporting, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 21-23 (1st Cir. 2000), works used to create a historical timeline,  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608-11 (2d Cir. 2006), and creative works that draw on other copyrighted works whether as a visual reference point, *Blanch v. Koons*, 467 F.3d 244, 254-55 (2d Cir. 2006), or as a historical reference point, *Sofa Entertainment, Inc. v. Dodger Productions*, 782 F. Supp. 2d 898, 904-06 (C.D. Cal. 2010).

10

recognition that transformative uses are not likely to result in market substitution.  *Campbell*, 510 U.S. at 591.  The cases Plaintiff cites are not helpful to his cause.  In *Castle Rock Entertainment v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), and *Balsey v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012), neither plaintiff claimed that the defendant's own challenged use constituted their market harm.  In fact, there was an obvious third-party market in both cases; the question was simply whether the plaintiff's selectiveness[6] or current desire to thwart dissemination[7] deprived them of any claim to market harm.  Here, Bouchat's utter failure to exploit the Shield Drawing (except by seeking damages from Defendants) stems not from intent or desire but from the lack of any viable market for a logo that was discontinued as the Ravens team logo over a decade ago.  No matter what Bouchat finds on the Internet, he has no evidence to support a finding that the Shield Drawing has any economic value apart from its association with the Ravens.  *See* McNamara Decl., Ex. 1, Responses to Interrogatories 1-3.

Next, Bouchat relies on *Murphy v. Millennium Radio Group LLC*, 650 F.3d 295 (3rd Cir. 2011), where the Third Circuit noted that "[plaintiff] is a professional photographer who engages in licensing of his work," and found that non-transformative reproduction of his photograph would adversely impact a "'traditional, reasonable, or likely to be developed market[]' for

---

[6] In *Castle Rock*, the plaintiff had "been highly selective in marketing products associated with *Seinfeld*, rejecting numerous proposals from publishers seeking approval for a variety of products related to the show."  150 F.3d at 136.  Nevertheless, the plaintiff had previously licensed a *Seinfeld* book and a CD-ROM product that included discussion of *Seinfeld* episodes. *Id.*  These facts bear no resemblance to Plaintiff's total failure to exploit or develop (or even identify) any market for the Shield drawing other than Defendants' own uses.

[7] In *Balsey*, the plaintiff purchased the copyright in photographs of herself participating in a wet T-shirt contest in an effort to thwart dissemination of the photographs online.  691 F.3d at 761. Nevertheless, the plaintiff was able to "present[] ample evidence of the vast market for the Bosley photograph" and argued that the defendant's use "directly competed for a share of [that] market." *Id.* Bouchat presents no comparable evidence here.

professional photographers." *Id.* at 308.  Here, however, Bouchat is hardly a professional artist

with a traditional or likely to be developed market for his artwork.  With equal weight to this

action, the *Murphy* court expressly stated:  "a copyright owner cannot claim market harm simply

because he would have liked to charge for the use in question."  *Id.*

Finally, *Iowa State University Research Foundation, Inc. v. ABC, Inc.*, 621 F.2d 57 (2d

Cir. 1980), also relied on by Bouchat, does not change this conclusion.  There, ABC Sports used

footage from a student-produced film for a biographical vignette during its Olympic telecasts,

but critically the court found that the defendant's use had usurped the potential market for

licensing the film for television in connection with the Olympics in part because the defendant's

use was not transformative.  *See id.* at 61.  Moreover, to the extent Plaintiff argues that *Iowa*

*State* stands for the general proposition that a defendant's own challenged use can constitute

market harm, its reasoning has been eroded by later decisions from the Second Circuit.  *See Bill*

*Graham Archives*, 448 F.3d at 614; *Blanch*, 467 F.3d at 258 n.9; *Ringgold v. Black Entm't Tel.*,

126 F.3d 70, 81 (2d Cir. 1997);  *Am. Geophysical Union*, 60 F.3d at 929 n.17.

In short, Bouchat's two primary theories  fail:  market harm cannot be inferred and it

cannot be derived from nothing more than Defendants' use of the work at issue.

**C.     Bouchat's Evidentiary Submissions Fail to Identify Any Viable Market That Would Be Harmed By EA's Use.**

At bottom, Bouchat's effort to establish some kind of market harm, notwithstanding his

undisputed failure to ever attempt to exploit the Shield Drawing for more than a decade and his

concession that he has no plans to do so, SJ Brief at 21-23, turns on supposed new-found

evidence that the Flying B Logo can randomly be found on the Internet or outside the Ravens

stadium.  Thus, Bouchat submits several affidavits that appear to do nothing more than catalogue

12

every use of the Flying B Logo that he can find on the Internet and around Baltimore.  Based on these affidavits, Bouchat claims "there is a market for retro merchandise and photographs using Bouchat's design, separate and apart from Defendants' use."  Opp. Brief at 7.  Yet, his evidence fails to establish that these uses represent actual and viable markets for the Shield Drawing or that EA's transformative use of the Flying B Logo inside *Madden NFL* would harm them.

Plaintiff points to merchandise bearing the Flying B Logo that is sold by third-parties on eBay and outside M&T Stadium on game days.  *See* Schulman Affidavit ("Schulman Aff."), Exhibits; Burtnick Affidavit ("Burtnick Aff."), Exhibits; Reynolds Affidavit ("Reynolds Aff."), Exhibits.[8]  Undisputed evidence demonstrates that each of the items Plaintiff describes as "retro merchandise" is either an unauthorized infringement or was licensed and sold prior to the NFL's cessation of use of the Flying B Logo in 1999.  Reply Declaration of Gary Gertzog ("Gertzog Reply Decl.") ¶ 4.  With respect to the latter category, Bouchat cannot expect to extract a license from fans and collectors who are exercising their right to resell merchandise under the first sale doctrine.  17 U.S.C. § 109(a).  Furthermore, simply pointing out the sale of this merchandise— without demonstrating that anyone selling it has been or would be willing to pay a license fee to Bouchat—does not raise a genuine issue of fact regarding the existence of a viable market.  The same is true of the former category, but it suffers the further problem that these uses violate the Ravens' and NFL's trademark rights and are therefore illegal.

Plaintiff's argument is strained to the breaking point when he points to historical photographs of Ravens players licensed by Getty Images and 1996 and 1997 team photographs sold by the Ravens through its website in conjunction with www.replayphotos.com.  Ignozzi Aff.

---

[8] Bouchat failed to number the exhibits to his affidavits, so it is impossible to pinpoint the referenced materials with more specificity than "Exhibits."

¶ 11, Exhibits; Schulman Aff., Exhibits. Simply pointing out that Getty Images licenses historical photographs that incidentally include the logo—without demonstrating that Getty Images has been or would be willing to pay a license fee to Bouchat or in any way grappling with whether the licensing of historical photographs could possibly be anything other than classic fair uses—cannot establish the existence of a viable potential market for the Shield Drawing. This "market" is based on nothing but pure speculation that Getty Images would pay Bouchat, a highly unlikely and an entirely speculative eventuality. The Ravens historical team photographs similarly do not constitute an independent market for Bouchat. This, like the uses being challenged in the companion cases, is an incidental reproduction of the Ravens logo in the course of documenting the history of the football franchise. Therefore, the team photos are fair use and Bouchat can claim no license fee.[9] Moreover, in both instances the photographs were taken and licensed in 1996-1998. Gertzog Reply Decl. ¶ 5. Thus, they do not reflect a potential future licensing market for the Shield Drawing based on current creations, but rather represent the licensing of works created over a decade ago.

　　　　Finally, Bouchat argues that he has a potential licensing market for the Shield Drawing "independent of football" because a single dog kennel in Baltimore has engaged in unauthorized

---

[9] Bouchat's attempt to claim a licensing market for these historical photographs demonstrates the dangerous breadth of his arguments. He believes (wrongly) that under *Bouchat IV* he is entitled to a licensing fee for ***every single depiction*** of the logo in conjunction with a profit-making enterprise, regardless of how incidental the Flying B Logo is to the historical photograph and regardless of whether the photograph is meant to document history or exploit Plaintiff's creative expression. Nothing in *Bouchat IV* justifies Plaintiff's argument. In fact the Fourth Circuit's decision directly contradicts his claimed entitlement of a license fee for photographs of this nature. *See Bouchat IV*, 619 F.3d at 314 (display of player photos and season tickets featuring Flying B Logo held to be transformative because the logo was "displayed to represent the inaugural season and the team's first draft picks"—i.e., "'not for its expressive content but rather for its . . . factual content.'") (quoting *Bond v. Blum*, 317 F.3d 385, 396 (4th Cir. 2003)).

14

use of the Flying B Logo (not the Shield Drawing).  Opp. Brief at 7; Schulman Aff. ¶ 3, Exhibits;

Ignozzi Aff. ¶ 12, Exhibits.  Plaintiff offers no evidence that Defendants have licensed the use of

the Flying B Logo to this business, and with good reason—Defendants have not authorized or

licensed this use.  Gertzog Reply Decl. ¶ 6.  Thus, B'mores Finest Pitbull Kennel is infringing

The Ravens' and the NFL's intellectual property in the Flying B Logo.  Further, even putting

aside this impediment, it is purely speculative to suggest the owner or owners of this kennel—

much less any other business—would be willing to license the logo from Bouchat rather than

simply cease using it.

In the end, all of Plaintiff's "market" arguments simply ignore EA's actual use of the

Logo.  EA's use of a graphic buried inside its fictional video game could not conceivably serve

as a substitute for using the logo in connection with the products or services in question.

Merchandise is worn (e.g., T-shirts, hats, gloves, and watches) or displayed in the home (e.g., a

pennant, a football helmet).  Historical photographs are used to document or commemorate real-

life history.  Plaintiff has not even attempted to explain how potentially capturing a glimpse of a

digital rendering of the Logo inside EA's game would impact any of these "markets"—not

surprisingly, given that he never mentions EA or *Madden NFL* by name in his brief.

\*       \*       \*

The supposed "markets" Bouchat identifies are nothing but *post-hoc* justifications to help

him obtain what has always been his goal: to extract payment from Defendants for the very uses

at issue in this case and its companion cases.  Because such uses cannot constitute Plaintiff's

market harm, and Plaintiff fails to present evidence sufficient to establish the existence of any

DWT 20518788v1 0058278-000021

other viable market that would be harmed by EA's transformative use, the fourth fair-use factor weighs heavily in favor of fair use.

**<u>CONCLUSION</u>**

As set forth above and in Defendants' opening brief, analysis of Section 107's fair-use factors compels the conclusion that EA's use of the Flying B Logo in *Madden NFL* constitutes fair use as a matter of law.  Accordingly, Defendants respectfully request that the Court grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure and dismiss the Complaint in its entirety.

Dated: Baltimore, Maryland
      October 15, 2012

               Respectfully submitted,

               ROSENBERG | MARTIN | GREENBERG, LLP

               By: <u>/s/                                         </u>
                   Gerard P. Martin (#00691)
                   gmartin@rosenbergmartin.com
                   Paul M. Flannery (#28574)
                   pflannery@rosenbergmartin.com

               25 South Charles Street, Suite 2115
               Baltimore, Maryland 21201
               Tel: (410) 727-6600
               Fax: (410) 727-1115

                   - and -

               DAVIS WRIGHT TREMAINE LLP
               Elizabeth A. McNamara (admitted *pro hac vice*)
               lizmcnamara@dwt.com
               Samuel M. Bayard (admitted *pro hac vice*)
               samuelbayard@dwt.com
               1633 Broadway, 27th Floor

16

New York, NY 10019
Tel: (212) 489-8230
Fax: (212) 489-8340

*Attorneys for Electronic Arts Inc.*

HOGAN LOVELLS US LLP

By: /s/
      Mark D. Gately (#00134)
      mark.gately@hoganlovells.com

100 International Drive, Suite 2000
Baltimore, Maryland 21202
(410) 659-2742 (Phone)
(410) 659-2701 (Facsimile)

- and -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert L. Raskopf
robertraskopf@quinnemanuel.com
Todd Anten
toddanten@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 (Phone)
(212) 849-7100 (Facsimile)

*Attorneys for Defendants NFL Properties LLC
and National Football League Properties, Inc.*