IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| FREDRICK E. BOUCHAT,<br><br>　　　　　　Plaintiff,<br><br>　-against-<br><br>NFL PROPERTIES LLC, et al.,<br><br>　　　　　　Defendants. | Civil Action No. MJG-11-2878<br>**REDACTED VERSION** |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants NFL Properties LLC and National Football League Properties, Inc. (collectively, "NFLP")[1] submit this memorandum of law in support of their motion for summary judgment, pursuant to Fed. R. Civ. P. 56, requesting that NFLP be dismissed from this action.

**PRELIMINARY STATEMENT**

This Court set forth the test of whether NFLP belongs in this case in its fair-use decision: "If there was no license [between NFLP and Electronic Arts Inc. ("EA")], there may be no claim against the [NFLP] …." *Bouchat v. NFL Properties LLC*, Nos. MJG-11-2878 et al., 2012 WL 5873684, at *10 (D. Md. Nov. 19, 2012) (Garbis, J.).[2] The Court now has before it undisputed evidence establishing that EA's uses of the Flying B Logo as alleged in the Complaint were not done pursuant to a license from NFLP. Such evidence includes:

---

[1]   As explained in NFLP's Disclosure of Affiliations and Financial Interests [Dkt. 18], National Football League Properties, Inc. is an entity that no longer exists—it was merged into the newly formed limited liability corporation NFL Properties LLC on December 31, 2001.

[2]   The Court reiterated in its letter to the parties on November 19, 2012 that "[i]f there was no license, it would appear that there would be no viable claim against the [NFLP]."

- 1 -

- A stipulation between NFLP and EA that NFLP did not provide a license to EA to use the Flying B Logo for the *Madden NFL* games at issue;

- Uncontested declarations from NFLP attesting that, for over a decade, NFLP has not provided any licenses to use the Flying B Logo in connection with merchandise;

- Examples of form letters sent to NFLP's licensees of the Flying B Logo in 1998 and 1999, directing them to cease all use of the Flying B Logo;

- The operative licensing agreement between NFLP and EA, pre-dating the alleged uses at issue, which does not include the Flying B Logo; and

- Screenshots of the NFL.biz website where NFLP makes available to its licensees the official specifications of each team's logo and various historic logos, showing that the website does not include the Flying B Logo.

Further, Bouchat has not articulated any basis for not crediting the stipulation between NFLP and EA, or any other reason for keeping NFLP in this action other than a nebulous desire for additional discovery. Bouchat has no good-faith basis for dragging NFLP through this case when he has not—and cannot—present any facts demonstrating that a license actually existed between NFLP and EA as of and after the date that *Madden NFL* first included the Flying B Logo as one of thousands of throwback uniform options.

In addition, as a practical matter, Bouchat cannot defeat NFLP's motion by insisting on discovery because there simply is no further relevant discovery to be had—any demand for discovery on the absence of a license would be akin to "an impermissible attempt to shift the burden to [NFLP] to prove a negative, *i.e.*, the non-existence of the agreement." *Peterson v. Atl. Funding Corp.*, 1998 WL 390842, at *3 (4th Cir. June 29, 1998) (unpublished) (affirming grant of summary judgment, holding that no enforceable contract existed between parties).

In short, when viewing the evidence supporting NFLP's motion "realistically"—even through Plaintiff's "rose-colored glasses," *Bouchat*, 2012 WL 5873684, at *2—there is no genuine dispute of material fact that NFLP should be dismissed from this action.

**ARGUMENT**

I. **NFLP AND EA STIPULATED THAT NFLP DID NOT LICENSE EA TO USE THE FLYING B LOGO IN THE GAMES AT ISSUE**

NFLP and EA entered into and filed a stipulation prior to the Court's filing of its fair use opinion, which provides that "while EA proceeded in good faith, the inclusion of the Flying B Logo by EA in the *Madden NFL* video game after July 31, 2002 ***was not done pursuant to a license from NFLP***." [Dkt. 39] ("Stipulation") (emphasis added). The Stipulation is dispositive of NFLP's motion. Because NFLP and EA—the only two purported parties to any agreement at issue—agree that the uses at issue were not done pursuant to a license, the Court should accept that there was, in fact, no license.[3] Further, as a non-party to any purported agreement between NFLP and EA, Bouchat does not have standing to challenge the Stipulation. *See*, *e.g.*, *Bird Realty Ltd. P'ship v. Jiffy Lube Int'l, Inc.*, No. ELH-12-1104, 2012 WL 6562762, at *6 (D. Md. Dec. 14, 2012) (contract can be enforced only by a signatory or a third-party beneficiary).[4]

In addition, the Court should note that Bouchat, by representing that he seeks additional discovery regarding the non-existence of a license, makes "an impermissible attempt to shift the burden to [NFLP] to prove a negative, *i.e.*, the non-existence of the agreement." *Peterson*, 1998 WL 390842, at *3. Bouchat has not articulated any good-faith reason to question the factual underpinnings of the Stipulation. The Court should not permit Bouchat to singlehandedly frustrate that Stipulation based on nothing more than his own unformulated suspicions.

---

[3] Courts will accept stipulations to the non-existence of a contract. *See*, *e.g.*, *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1279 (10th Cir. 2006) (referencing with approval parties' stipulation to the absence of a contract); *Johnson v. City Council of Green Forest, Ark.*, 545 F. Supp. 43, 50 (W.D. Ark. 1982) (accepting "stipulat[ion] that there was no contract"); *Oriental Realty Corp. v. Local 144*, 523 F. Supp. 442, 445 n.1 (E.D.N.Y. 1981) (accepting "[s]tipulation [that] there was no contract").

[4] Bouchat cannot seriously claim he is an intended third-party beneficiary to any purported license between EA and NFLP, nor did he so allege in his Complaint.

## II. ADDITIONAL EVIDENCE IN THE RECORD CONFIRMS THAT NFLP DID NOT LICENSE EA TO USE THE FLYING B LOGO IN THE GAMES AT ISSUE

While the Stipulation alone provides a sufficient basis for the Court to dismiss NFLP from this action, additional factual evidence in the record confirms that NFLP did not license EA to use the Flying B Logo in the games at issue. Such evidence includes: (1) representations made by NFLP in earlier declarations regarding the absence of any licensing of the Flying B Logo on merchandise; (2) letters sent by NFLP to licensees in 1998 and 1999 regarding cessation of the use of the Flying B Logo; (3) the operative licensing agreement with EA, pre-dating the uses at issue, that excludes the Flying B Logo from its scope; and (4) screenshots of the NFL.biz website where NFLP makes available to its licensees (with NFLP's approval) the official specifications of each team's logo and various historic logos, showing that the website does not include the Flying B Logo.

### A. Representations In Prior Declarations Regarding Absence Of Licensing

With their earlier summary judgment filings in this action, the defendants submitted a declaration from Gary Gertzog, Senior Vice President Business Affairs and General Counsel of NFLP, stating that "for over a decade, the NFL has not offered for sale any 'throwback' merchandise that features the Flying B Logo" [Dkt. 29, ¶ 3]. Further, in response to purported third-party uses of the Flying B Logo on merchandise, the defendants submitted another declaration from Mr. Gertzog, stating that "NFL has not offered for sale, nor authorized for sale, any 'retro merchandise' featuring the Flying B Logo in over a decade" and that each of these uses identified was "either an unauthorized infringement or licensed and sold prior to NFL's cessation of the use of the Flying B Logo in 1999." [Dkt. 35, ¶ 4]. Thus, the record already contains evidence supporting the non-existence of a license by NFLP to EA for use of the Flying B Logo in the *Madden NFL* games at issue.

B.  **Letters Sent In 1998 And 1999 Instructing Licensees To Cease Use Of The Flying B Logo**

Further demonstrating the absence of a license between NFLP and EA to use the Flying B Logo is the evidence of letters sent to licensees of the Flying B Logo in 1998 and 1999 instructing them to cease such use. Specifically, on or about December 4, 1998, NFLP sent form letters to its licensees informing them that, "effective immediately," no designs using the Flying B Logo would be approved and that all production of previously approved products bearing the Flying B Logo must be suspended. (*See* Declaration of Gary Gertzog, dated January 10, 2013 ("Gertzog Decl."), ¶ 3 & Ex. A.)

Then, on March 16, 1999, NFLP sent form letters to licensees stating:

> As you may be aware, because of the need to eliminate uncertainty while the appeal process continues, the Ravens are developing a new helmet logo for the upcoming 1999 season. Consequently, because a new logo will be adopted and, pursuant to our previous letter, you should not have been producing product using the [Flying B] Logo, we require that all inventory containing the [Flying B] Logo be sold by March 31, 1999. ***After that date, you may not sell any product with the [Flying B] Logo.***

(*Id.* ¶ 4 & Ex. B) (emphasis added.)[5] While NFLP is not currently able to locate copies of every letter sent to every licensee in 1998 and 1999, NFLP believes in good faith that it sent these form letters to each of its licensees, including EA. (*See id.* ¶ 6.) This constitutes additional factual confirmation that EA did not use the Flying B Logo in the games at issue pursuant to a license from NFLP.

C.  **Operative License Agreement For The Games At Issue**

In addition, the license agreement and amendments between NFLP and EA for the use of NFLP logos in EA video games affirmatively demonstrate that the Flying B Logo was not included in the library of intellectual property licensed for EA's use in the games at issue.

---

[5]  NFLP sent nearly identical letters to its promotion partners. (Gertzog Decl., ¶ 5 & Ex. C.)

Under the operative 2004 license agreement, NFLP licensed to EA certain exclusive and non-exclusive rights to use "the NFL Trademarks" in EA games. (Gertzog Decl., ¶ 7 & Ex. D (the "2004 License")). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ NFLP never granted approval to EA to use the Flying B Logo in the games at issue. (*Id.* ¶ 7); Stipulation. Therefore, by its plain terms, the use of the Flying B Logo in the games at issue was outside the scope of the 2004 License.

### D. Screenshots of NFL.biz Website

Finally, NFLP provides a comprehensive online catalog of team logos or "primary marks" available for use by its licensees at its NFL.biz website. (Gertzog Decl., ¶ 8.) The NFL.biz website is a password-protected website, and each licensee is provided a password and login by NFLP. (*Id.*) Licensees are then directed to the NFL.biz website to obtain the official primary marks for all 32 NFL teams. (*Id.*) Each team's page shows the available primary marks for that team, as well as design and uniform notes, so that licensees depict the marks correctly. (*Id.*) The Ravens' page includes only the current Ravens team logo, *not* the Flying B Logo. (*Id.*, ¶ 8 & Ex. E.) Additionally, in the "historic marks" section of NFL.biz devoted to the Ravens, the current logo is the *only* featured logo, and the page states: ***"This team does not have a vintage mark. Please use their current logo when identifying the team in a vintage environment."*** (*Id.*, Ex. E) (emphasis added.) And in fact, the Flying B Logo has never been available on the NFL.biz website. (*Id.* ¶ 8.) This further confirms that NFLP does not license

the Flying B Logo, either as a current or vintage mark, and that EA did not use the Flying B Logo in the games at issue pursuant to a license from NFLP.

*     *     *

Taken together, the Stipulation, the declarations, the 1998 and 1999 letters, the license between NFLP and EA, and the NFL.biz website all demonstrate that NFLP did not license to EA the Flying B Logo for the uses alleged in the Complaint.  Further, Bouchat has been unable to articulate any good-faith basis for contesting this fact.  Additional discovery in this action would be supremely wasteful of both party and judicial resources, and would serve no purpose other than to harass NFLP.[6]

## **CONCLUSION**

For the foregoing reasons, NFLP respectfully requests that the Court grant its motion for summary judgment in its entirety, and dismiss NFLP from this action.

Dated: January 10, 2013                              Respectfully submitted,

                                                                           /s/
                                              Robert L. Raskopf (admitted *pro hac vice*)
                                              robertraskopf@quinnemanuel.com
                                              Todd Anten (admitted *pro hac vice*)
                                              toddanten@quinnemanuel.com
                                              Rachel E. Epstein (admitted *pro hac vice*)
                                              rachelepstein@quinnemanuel.com
                                              QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                              51 Madison Avenue, 22nd Floor
                                              New York, New York 10010
                                              (212) 849-7000 (Phone)
                                              (212) 849-7100 (Facsimile)

                                                - and –

                                              Mark D. Gately (#00134)

---

[6] If the Court is inclined to deny the instant motion and grant Bouchat the opportunity to conduct such wasteful discovery into this issue, then NFLP respectfully requests that the Court shift all of NFLP's costs for such discovery to Bouchat.

mark.gately@hoganlovells.com
Andrea W. Trento (#28816)
andrea.trento@hoganlovells.com
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, Maryland 21202
(410) 659-2742 (Phone)
(410) 659-2701 (Facsimile)

*Attorneys for Defendants NFL Properties LLC and National Football League Properties, Inc.*

- 8 -